UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HARRIETA MOORE,<br><br>    Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC.; JOHN PETRONI; DR. COFFEE, Medical Director of MEDTRONIC, INC.; DOES I-V, inclusive; ROES I-X, inclusive; jointly and severally,<br><br>    Defendants. | Case No. 2:05-CV-01329-KJD-PAL<br><br>**ORDER** |

Presently before the Court is Plaintiff's Motion to Remand (#26). The Court has also considered Defendants' Opposition (#18), as well as the Plaintiff's Reply (#19, 22).

**I. Background**

On October 15, 2003, Harrieta Moore ("Plaintiff") underwent surgery for placement of a catheter that Medtronic manufactured. Plaintiff's surgeon, Dr. Thomas, was familiar with this device and had implanted the same catheter over 30 occasions prior to Plaintiff's surgery. Defendant Petroni was working for Medtronic as a "Therapy Consultant" at that time. In preparation for the surgery, Dr. Thomas's office contacted Defendant Petroni to request that a pump and a catheter be ordered. The catheter implanted into Plaintiff was taken from Medtronic's "trunk stock" which consists of Medtronic medical devices stored in

Defendant Petroni's office, or residence, so that they can be readily available for a surgeon's use. Records indicate that Defendant Petroni did not arrange the purchase order and invoice for the catheter at issue. The paperwork was handled by Scott Nellis, a registered nurse and independent contractor for Medtronic. Doug Heidrich, a Medtronic Technical Consultant, invoiced the devices. Scott Nellis attended the surgery to provide technical assistance to Dr. Thomas.

Approximately five hours after the operation, Plaintiff experienced some weakness in her right leg. A CAT scan revealed that the catheter had slipped into the spinal cord and the morphine emanating from the catheter was displacing Plaintiff's spinal cord fluid. Dr. Thomas contacted Dr. Coffey, Medtronic's Medical Director, to discuss the complications experienced with Plaintiff's surgery. Plaintiff was immediately returned to surgery where the catheter was removed. Plaintiff was found to have suffered the onset of monoplegia.

On December 15, 2004, Harrieta Moore sued Medtronic, Inc., John Petroni, and Dr. Coffey for negligence, breach of warranties, strict liability, and joint and several liability in the state district court. Defendants filed their notice of removal on November 3, 2005. Defendants based removal on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff subsequently brought the instant Motion to Remand on the basis that Defendant Petroni is a Nevada resident and, therefore, complete diversity does not exist.

**III. Analysis**

A suit may be removed to federal court only if it could have been filed there originally. See 28 U.S.C. § 1441(a); Caterpiller, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over cases between citizens of different states. See 28 U.S.C. § 1332(a) (having original jurisdiction over all civil action involving diverse parties when the amount in controversy exceeds $75,000). The defendant or defendants may remove such an action to federal court provided that no defendant is a citizen of the state in which the action was brought. See id. § 1441(a), (b). However, the district court must

remand a case where diversity is absent if the action does not raise a federal question. See id. § 1447(c). The courts strictly construe the removal statute against removal jurisdiction. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id.

Defendants have removed this action and allege that Plaintiff fraudulently joined Petroni as a Defendent in an attempt to destroy diversity and prevent removal. Defendants argue that Plaintiff has no viable claims against Defendant Petroni. Plaintiff asserts that if any of her claims are valid against Defendant Petroni, it is the one alleging strict liability.[1]

"If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent." United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 761 (9th Cir. 2002). If a defendant has been "fraudulently joined," that defendant's presence is ignored for purposes of determining diversity. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). A removing party always has the burden of establishing that removal is proper, and courts resolve doubts as to removability in favor of remand. See Gaus, 980 F.2d at 566; see also Dodson v. Spiliada Mar. Corp., 951 F.2d 40, 42 (5th Cir. 1992) (holding that disputed questions of fact and all ambiguities in state law must be resolved in favor of the non-removing party). Typically, the court will look solely to a plaintiff's pleadings, without recourse to the defendant's pleadings, to determine removability. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). However, when a fraudulent joinder is at issue, the defendant is entitled to present the facts showing why the joinder is fraudulent. See id. Remand is required unless there is absolutely no possibility that the plaintiff will be able

---

[1] Plaintiff makes no argument to support her claim of negligence against Defendant Petroni and only addresses her breach of warranties claim in response to Defendants' Opposition.

3

to establish a cause of action against the in-state defendant in state court.  See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995).

### A. Strict Liability claim against Defendant Petroni

"Under the law of strict liability in [Nevada], responsibility for injuries caused by defective products is properly fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.  Although manufacturers are not insurers of their products, where injury is caused by a defective product, responsibility is placed upon the manufacturer and the distributor of the defective product rather than on the injured consumer."  Allison v. Merck & Co., 878 P.2d 948, 952, 110 Nev. 762, 767-68 (1994).  Under Nevada law, sellers can be strictly liable for products sold.  See id. at 951 n.1, 110 Nev. at 766 n.1.[2]

Defendants argue that Defendant Petroni is neither a "manufacturer" nor a "seller," as required for strict products liability.  Unfortunately, there is a dearth of case law in Nevada state courts defining what a "seller" is for purposes of strict products liability.[3]  Moreover,

---

[2]In many of its cases, the Nevada Supreme Court has relied on section 402A of the Restatement (Second) of Torts in addressing strict products liability under Nevada law.  See Id. at 953-58, 110 Nev. at 769-76 (addressing the application of comment k to section 402A); Ellery v. Stephens, 760 P.2d 768, 771-72, 104 Nev. 413, 417-18 n.3 (1988) (citing comment f to section 402A).  Although, these cases predate the publication of the Restatement (Third) of Torts, it appears that the Nevada Supreme Court regularly relies on the restatements of torts in addressing strict products liability claims.

[3]Defendants cite to Allison as well as to the Restatement (Third) of Torts, in support of their argument that Defendant Petroni is not a seller under a strict products liability theory.  Neither citation renders the instant motion meritless.  In Allison, the Nevada Supreme Court held that the county health district was not a "seller of products" and, thus, could not be held liable under a warranty or strict products liability theory in connection with injuries an infant allegedly suffered after having a measles, mumps and rubella (MMR) vaccine shot.  See 878 P.2d at 951 n.1, 110 Nev. at 766 n.1.  This holding was placed in a footnote and the Nevada Supreme Court gives no reasoning behind its decision.  See id.  The court generally cites to section 402A without pointing to one of this section's comments which could have elucidated the court's reasoning.  Moreover, there are obvious differences between a county health district and a sales representative for a manufacturer which would make Allison's holding inapplicable to the instant case.

Defendants also cite to the Reporters' Note of the Restatement (Third) of Torts' section 20 for the proposition that sales personnel, sales representatives, and other sales

4

Nevada case law has not addressed whether a sales representative for a manufacturer can be considered a "seller" for purposes of liability under a strict products liability theory. Other jurisdictions are split on the issue.[4]

In order to prevail, Defendants must demonstrate that Plaintiff cannot maintain any of the alleged causes of action against Petroni. As explained previously, it is unclear as a matter of state law whether a sales representative like Petroni is or is not a "seller of products" under a theory of strict products liability. This Court can not (but more importantly will not) predict how the state courts would define a "seller" for purposes of strict products liability given their silence so far on this issue. Moreover, if Petroni's position would be considered a "seller" for purposes of strict products liability, when viewing the evidence in the light most favorable to the Plaintiffs, one could find that Defendant Petroni was a sufficient link in the chain of distribution. What role, if any, Defendant Petroni played in procuring the product for Plaintiff's surgery should be determined by the trier of fact.

The Court is sympathetic to Defendants' argument that Petroni is not a "seller" under a theory of strict products liability. However, the Court's sympathies are not the standard by which to review a motion to remand. The Court is instructed to remand a case unless there is absolutely no possibility that the plaintiff will be able to establish a cause of action against

---

facilitators are not subject to strict products liability. See Restatement (Third) of Torts: Prod. Liab. § 20, Rep. Note, cmt. g (1998). This same Reporters' Note also states that an exclusive sales representative or exclusive agents can be held strictly liable for defective products. See id. Given these competing statements and the lack of evidence regarding Defendant Petroni's status vis-a-vis the manufacturer, the Court cannot find that there is absolutely no possibility that Plaintiff can maintain a cause of action against Defendant Petroni. Because of this doubt, this citation does not foreclose remand.

[4]Compare Memphis Bank & Trust Co. v. Water Serv., Inc., 758 S.W. 2d 525 (Tenn. 1998) (holding that a sales representative is not subject to strict products liability) with Bittler v. White & Co., Inc., 560 N.E. 2d 979, 203 Ill. App. 3d 26 (1990) (finding that participatory connection with the defective product was sufficient to subject the exclusive sales representative to strict products liability), and Brumbaugh v. CEJJ, Inc., 547 N.Y.S. 2d 699, 152 A.D. 2d 69 (1989) (finding exclusive sales agent subject to strict products liability because he was a mandatory link in the distribution chain).

the in-state defendant in state court. Defendants have not met their heavy burden concerning the alleged fraudulent joinder of Defendant Petroni. Because Plaintiff has a "colorable" state law claim against Defendant Petroni, this Court must grant Plaintiff's motion to remand.

### B. Timeliness of Removal and Other Claims

Defendants have not shown that Defendant Petroni was fraudulently joined. Therefore, there is no need to address the merits of Plaintif"'s other claims against him. Similarly, there is no need to address Plaintiff's argument that Defendants' removal was not timely pursuant to 28 U.S.C. § 1446(b).

### IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (#26) is **GRANTED**.

DATED this 26th day of June 2006.

_____
Kent J. Dawson
United States District Judge

6